**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | : | |
| NIDIA SOLANO-SANCHEZ | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | 19-4016 |
| v. | : | |
| | : | |
| STATE FARM MUTUAL AUTO | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant. | : | |
_____ :

Henry S. Perkin, M.J.                                                    January 22, 2021

**<u>MEMORANDUM</u>**

This matter is before the Court on Plaintiff's informal motions to compel wherein Plaintiff seeks assistance with discovery issues related to the depositions of Defendant's claims adjuster, Daniele Smith, and corporate designee. Having reviewed and considered the contentions of both parties, the Court is prepared to rule on this matter.

**I.     BACKGROUND**

On September 3, 2019, Plaintiff filed the instant lawsuit, asserting claims for declaratory judgment, breach of contract, and bad faith against Defendant State Farm arising from her claim for underinsured motorist ("UIM") benefits. The case was subsequently assigned to the Honorable Joseph F. Leeson, Jr. On October 16, 2019, Defendant moved to dismiss the count for bad faith, as well as any claims for attorney fees in the count for breach of contract. (ECF No. 9.) Judge Leeson denied Defendant's Motion to Dismiss and, on April 24, 2020, the parties consented to jurisdiction before this Court.

On June 26, 2020, Plaintiff's counsel emailed Defendant's counsel requesting availability to schedule the deposition of State Farm's claims adjuster, Daniele Smith. (Resp. to Def. Object., Ex. B.) After a brief email exchange, Plaintiff issued a notice of deposition to Ms. Smith on July 10, 2020 scheduling a video deposition for August 13, 2020. (*Id.*, Ex. F.) Along with the notice of deposition, pursuant to Federal Rules of Civil Procedure 30(b)(2) and 34(a)(1), Plaintiff requested that Defendant produce a number of documents at the deposition.

On August 4, 2020, Defendant's counsel emailed Plaintiff's counsel, requesting that the deposition be rescheduled.  (*Id.*, Ex. G.) Plaintiff's counsel agreed and, on August 20, 2020, sent a revised notice of deposition rescheduling Ms. Smith's deposition for September 23, 2020. (*Id.*, Ex. I.) Plaintiff's counsel later requested that the deposition be rescheduled, and the parties agreed to hold the deposition on October 6, 2020. Two days later, on September 25, 2020, Plaintiff issued an amended notice of deposition with the new date. (*Id.*, Ex. L.)  Plaintiff also issued a  notice of deposition to State Farm's corporate representative that same day. In this notice, Plaintiff described the matters for examination and requested the production of certain documents at the time of the deposition.

On October 1, 2020, Defendant's counsel emailed Plaintiff's counsel its answers and objections to Plaintiff's request for production of documents in connection with the deposition of Ms. Smith. (*Id.*, Ex. J.) Defendant objected to every request, claiming that the requests were vague, ambiguous, overly broad in time and scope, potentially burdensome, not relevant, not proportional to the needs of the case, and may contain materials that are confidential, proprietary business information, and/or trade secret. *Id.* After communicating by email regarding these objections, the parties agreed to seek the Court's assistance in resolving the disputed issues.  (*Id.*, Ex. K.) Defendant's counsel also noted in his email correspondence that Defendant would be objecting to the notice of deposition for the corporate designee on the basis of both scope and the need for the deposition itself. *Id.*

Defendant's counsel emailed this Court on October 5, 2020, requesting a telephone conference regarding the discovery disputes. (*Id.*, Ex. L.) Plaintiff's counsel sent a subsequent email providing more detail and attaching a copies of the notices of deposition. *Id.* On October 6, 2020, the Court held a conference with counsel, reiterating its desire for parties to reach a compromise on their own. The Court further directed the parties to submit letter briefs on the matters within 48 hours if they could not come to a resolution. Regarding potential objections to the notice of deposition to the corporate designee, the Court directed Defendant to submit those promptly to the Plaintiff.  Later that day, Plaintiff's counsel emailed Defendant's counsel, indicating that she would be willing to limit the request for documents to the time period from 2015-2020 and to only UIM claims. (*Id.*, Ex. M.)[1]

---

[1] According to Plaintiff's October 7, 2020 letter brief to this Court, Defendant did not respond to this email.

Defendant's counsel provided this Court with its answers and objections to Plaintiff's request for documents in the notice of deposition of Daniele Smith. Counsel also emailed a letter brief, dated October 6, 2020, expounding upon its argument and restating its intent to object to certain matters for questioning identified by Plaintiff in her notice of deposition of the corporate representative. The next day, Plaintiff emailed this Court her response to Defendant's objections to the deposition of Ms. Smith. On October 8, this Court held another telephone conference with counsel to discuss their positions identified in the briefs. Following this call, and in response to Judge Perkin's request, both parties sent emails specifically addressing the issue of when an insurer is on notice of a claim for UIM benefits.

On October 8, 2020, Defendant sent Plaintiff its answers and objections to the notice of deposition of a corporate designee. Plaintiff's counsel emailed this Court, noting that she was in receipt of the objections and requesting that this Court hold any decisions on the terms and parameters of Ms. Smith's deposition until she could address the objections toward the corporate designee deposition. On October 21, 2020, Plaintiff's counsel provided its response to Defendant's objections to the deposition of the corporate representative. This Court emailed Defendant's counsel on November 4, 2020, requesting a copy of the relevant objections along with any additional briefing that Defendant would like to offer. Defendant's counsel replied on November 9, 2020, attaching its answers and objections to the notice of deposition along with a letter brief.

Now that we are in receipt of the parties' briefs, this Court is prepared to rule on the objections to the notices of deposition of both Daniele Smith and the corporate designee. The Court will address each objection below, *in seriatim*.

## II.   DISCUSSION

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is a broad concept that encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *See Green v. Cosby*, 314 F.R.D. 164, 171 (E.D. Pa. Mar. 21, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Henry v. Morgan's Hotel Grp., Inc.*, No. 15-1789, 2016 U.S. Dist. LEXIS 8406, at *8-9 (S.D.N.Y. Jan. 25, 2016) (recognizing that the Oppenheimer Court's definition of

relevance is still applicable after the 2015 amendment to Federal Rule of Civil Procedure 26(b)(1)).  "As an initial matter, therefore, all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

While the discovery rules are meant to be construed liberally, the responses sought [by a party] must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party." *Hicks v. Arthur*, 159 F.R.D. 468, 470 (E.D. Pa. 1995). "To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." *Trask v. Olin Corp*., 298 F.R.D. 244, 263 (W.D. Pa. 2014).  In deciding which materials are discoverable and which are not, a district court must further distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," *Oppenheimer*, 437 U.S. at 352, and demands that are "overly broad and unduly burdensome*." Miller v. Hygrade Food Products Corp*., 89 F.Supp.2d 643, 657 (E.D. Pa. 2000).

### a.  Deposition of Danielle Smith, Claims Adjuster

As previously noted, Defendant objects to every request for documents in the notice of deposition of Daniele Smith. This Court will address each request below to determine the scope of allowable discovery.

> 1.  *Request 1: Any and all documents, policies, procedures, rules, regulations, manuals, training documents, or other documents or things relevant to the handling and/or evaluation of Underinsured Motorists claims during the period of 2015-2020.*

Defendant objects to this request first on the grounds that it is: overly broad in time and scope, unlimited in geographic area, not limited to employees who handled this claim, and not reasonably tailored to include only those matters relevant to the adjustment of the underinsured motorist benefits claim at issue. Defendant also claims that the request seeks information that is not relevant to claims or defenses of a party and not proportional to needs of case. Finally, Defendant maintains that the requested materials may be confidential, proprietary business information,  and/or trade secret.

Plaintiff responds that this request is directly relevant to her bad faith claim as it is necessary to examine what factors the insurer considered in evaluating a claim to decide whether

there existed a reasonable basis for denying benefits. In response to the objection that the requested materials "may be confidential, proprietary business information, and/or trade secret," Plaintiff argues that it is the Defendant's burden to establish that the information sought is a trade secret, and Defendant has made no showing that the materials requested are trade secrets or proprietary information.

We agree with Plaintiff that the request is relevant to both the breach of contract and bad faith claims.[2] "[It] is well-settled that manuals and other training materials are relevant in bad faith insurance litigation where they contain instructions concerning procedures used by employees in processing claims." *McCrink v. Peoples Benefit Life Ins. Co.*, 2004 WL 2743420, at *8 (E.D. Pa. Nov. 29, 2004)(citing *Shellenberger v. Chubb Life America*, 1996 WL 92092, at *2 (E.D. Pa. Feb.29, 1996) (copies of definition section in insurance company's manuals relevant to bad faith insurance litigation if they "are related to the facts of the case at issue"). Training materials "relevant to processing the claim in question" are discoverable, as they may show, *inter alia*, "that agents of an insurance company recklessly disregarded standard interpretations of a particular contractual provision in denying coverage or deliberatively omitted certain investigatory steps." *Id.* (citing *Robertson v. Allstate Ins. Co.*, 1999 WL 179754, at *6 (E.D. Pa. Mar. 10, 1999)(requiring production of information contained in procedure manuals setting forth insurance company practices for handling claims for underinsured motorist benefits); *Kaufman v. Nationwide Mutual Ins. Co.*, 1997 WL 703175, at *2 (E.D.Pa.1998) (requiring insurance company to produce information contained in manuals and newsletters to the extent that information concerns procedures used by employees who directly handled plaintiff's claims)).

While the information sought is relevant, we concur with Defendant that the request is overly broad in time, and should be limited to the period from when Defendant was first on notice of a UIM claim through the present. Defendant contends it was on notice when Plaintiff "first made a UIM claim on January 12, 2018." During the October 8th call, Plaintiff claimed that Defendant was on constructive notice of a potential UIM claim in 2016, when the motor vehicle accident occurred. After reviewing the record, as well as Judge Leeson's memorandum on

---

[2] Rule 401 defines evidence as relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In other words, to be admissible, evidence must be probative, meaning that the evidence advances the inquiry toward proving or disproving a material issue. *See, e.g., Bowers v. Garfield*, 382 F. Supp. 503, 510 (E.D. Pa. 1974); *Stauffer v. McCrory Stores Corp.*, 155 F. Supp. 710, 712 (W.D. Pa. 1957).

Defendant's Motion to Dismiss, this Court finds that Defendant was on notice of Plaintiff's intent to pursue a claim for underinsured motorist benefits on March 16, 2017. On that day, Defendant State Farm received correspondence from Plaintiff's counsel informing Defendant of an anticipated underinsured motorist claim arising out of the October 12, 2016 accident.[3] (ECF No. 16 at 11.) *See also Rossi v. Progressive Ins.,* 813 F. Supp. 2d 643, 645 (M.D. Pa. 2011)(insurer was on notice of an underinsured motorist claim via written notice from the plaintiff's attorney; *Travelers/Aetna Prop. Cas. Corp. v. Snell*, 1997 WL 88908, at *1 (E.D. Pa. Feb. 21, 1997)(same).

With respect to geographic scope, we conclude that the request should be limited to those documents and materials governing underinsured motorist claims in Pennsylvania. The underlying accident took place in Pennsylvania, Plaintiff is a resident of Pennsylvania, and her automobile insurance policy "provided for underinsured motorist benefits ("UIM") in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law." (ECF No. 1, ¶ 25.) Those documents governing states other than Pennsylvania are irrelevant and not proportional to the needs of the case.[4]

Lastly, this Court is in agreement with Plaintiff that Defendant has made no showing that the materials requested are trade secrets or proprietary information. Under Pennsylvania law, a trade secret "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir. 1989)(citing *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1255 (3d Cir.1985)). Defendant's bare allegations that the information requested falls under this definition is not sufficient to protect such information from discovery.[5]

---

[3] Specifically, the correspondence advised State Farm of Plaintiff's legal representation and requested "an Application for First Party Personal Injury Protection ("PIP") benefits together with the Declarations Page a Copy of the UM/UIM Waiver and the Tort Election Form in force on the date of loss." (ECF No. 1, Ex. C.)

[4] When determining proportionality, this Court considers: the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Regarding this request, the burden and expense of producing all documents, policies, procedures, and other materials relevant to the evaluation of UIM claims – regardless of whether they applied to the underlying claim for UIM benefits in this case – far outweighs any potential benefit.

[5] Defendant is not precluded from moving for a protective order governing the disclosure of proprietary information. Further, as Plaintiff has repeatedly conveyed to Defendant, she is willing to enter a confidentiality

Therefore, Request 1 shall be limited to the following information: **Any and all documents, policies, procedures, rules, regulations, manuals, training documents, or other documents or things relevant to the handling and/or evaluation of Underinsured Motorists claim in Pennsylvania during the period of March 16, 2017 through 2020.**[6]

> 2. *Request 2: A true and correct copy of the complete "Claims Manual/Claims Office Manual" or other such similar document(s) by whatever name or title used by Defendants for the handling of Underinsured Motorists benefits for the years 2015 through and including 2020.*

Defendant objects to the second request on the same grounds as it does in the previous request. Similarly, Plaintiff incorporates her reply to the first objection in responding to Plaintiff's objections.

For the same reasons this Court discussed above, Request 2 shall be limited to the following information: **A true and correct copy of the complete "Claims Manual/Claims Office Manual" or other such similar document(s) by whatever name or title used by Defendant for the handling of Underinsured Motorists benefits in Pennsylvania during the period of March 16, 2017 through 2020.**

> 3. *Request 3: A true and correct copy of the complete "Training Manual" or other such similar document(s) by whatever name or title used by Defendant for the purpose of training its employees in the handling of Underinsured Motorists benefits claims for the years 2015 through and including 2020.*

Defendant contends that this request is vague, ambiguous, overly broad, and potentially burdensome. Specifically, Defendant maintains that the request is overbroad because it is not limited in time, scope, or geography or to employees who handled this claim. Additionally, Defendant claims that the request seeks information that is not relevant to claims or defenses of a party and not proportional to needs of case. As with the earlier objections, Defendant also argues that the requested materials may be confidential, proprietary business information, and/or trade

---

agreement. Under such agreement, Defendant may designate any confidential materials "attorneys' eyes only" or "confidential" to reduce concerns about the disclosure of sensitive information.

[6] This Court will not limit production only to those portions of materials sent to employees who directly handled Plaintiff's claim, as the failure to provide interpretative, training, and investigatory manuals to those agents who processed Plaintiff's claim may provide evidence of bad faith.

secret. Plaintiff raises the same arguments in her response to this objection as she did in the previous two objections.

For the same reasons this Court discussed above, Request 3 shall be limited to the following information: **A true and correct copy of the complete "Training Manual" or other such similar document(s) by whatever name or title used by Defendant for the purpose of training its employees in the handling of Underinsured Motorists benefits claims in Pennsylvania during the period of March 16, 2017 through 2020.**

> 4. *Request 4: True and correct copies of any and all claims bulletins, internal memoranda, letters, notices, or similar documents sent by management to the claims staff relating to the handling of Underinsured Motorists benefits claims for the years 2015 through and including 2020.*

Defendant raises almost identical objections to this request as it did in the previous request. Defendant adds that it objects, in particular, to the use of the terms "any and all", "claim bulletins," and "or similar documents" on the ground that they are vague, ambiguous, and overly broad. Further, Defendant asserts that the request is "potentially unduly burdensome."

In addition to incorporating her prior responses, Plaintiff adds that Defendant's claim that the request is "potentially unduly burdensome" lacks support. Plaintiff explains that "[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Nike, Inc. v. Brandmania.com, Inc*., No. 00-5148, 2002 U.S. Dist. LEXIS 20355, at *5 (E.D. Pa. Oct. 3, 2002). However, "[t]he mere statement that a discovery request is 'overly broad, burdensome oppressive and irrelevant' is not adequate to voice a successful objection." *Id.* (citing *Berry v. Rite Aid Corporation*, 2001 WL 527815 at * 1 (E.D. Pa. May 16, 2001); *Barnes Foundation v. Township of Lower Merion*, 1996 WL 673114 at *2 (E.D. Pa. Nov. 1, 1996).

In accordance with our previous analysis, the Court does find that such a request may be unduly burdensome if not limited further in time and geographic scope. Also, allowing discovery of materials relating to the handling of UIM claims outside of Pennsylvania and prior to the date when Plaintiff notified Defendant of its intent to pursue a claim is likely to produce irrelevant documents that do not advance the inquiry of whether Defendant had a reasonably basis for denying Plaintiff's claim. Thus, Request 3 shall be limited to the following information: **True and correct copies of any and all claims bulletins, internal memoranda, letters, notices, or**

**similar documents sent by management to the claims staff relating to the handling of**
**Underinsured Motorists benefits claims in Pennsylvania during the period of March 16,**
**2017 through 2020.**

> 5. *Request 5: True and correct copies of any and all contracts with any medical*
> *audit concern and entity that processed any payments for any of the medical*
> *bills submitted for payment by the Plaintiff or by any of the Plaintiff's medical*
> *providers.*

As indicated in her response, Plaintiff agrees to withdraw this request.

> 6. *Request 6: True and correct copies of any and all letters, correspondence,*
> *documents, reports, or other records which relate to review, evaluation, and/or*
> *assessment of the causation or lack thereof of Plaintiff's injuries following the*
> *underlying motor vehicle accident which was relied upon in the handling,*
> *assessment, investigation, and/or evaluation of Plaintiff's UIM claim.*

Defendant objects to this request on the grounds that it is vague, ambiguous, not
reasonably tailored to include only those matters relevant to the adjustment of the UIM claim at
issue, and seeks information that is not relevant or proportional. Defendant adds that the request
seeks info that is confidential, proprietary, and/or trade secrets. Lastly, Defendant maintains this
request seeks information protected by the attorney-client privilege and/or work-product
doctrine. Defendant explains that it first retained counsel on April 19, 2018 to assist in the claim
investigation and evaluation, prior to the filing of the lawsuit on September 3, 2019. On October
24, 2019, after the lawsuit was filed, State Farm completed its evaluation and tendered a
settlement offer. Thus, Defendant contends that its claim evaluation and strategy is protected by
the work-product doctrine as it was "prepared in anticipation of litigation, and[,] in fact[,] after
litigation was initiated." Defendant further maintains that the following categories of information
are all clearly protected by the attorney-client privilege: communications with Defendant's legal
counsel, UIM claim evaluation and strategies prepared with the assistance of legal counsel, and
the basis for Defendant's settlement offer tendered by its legal counsel.

Plaintiff incorporates her response from Defendant's objection to the first request. Citing
to precedent both within and outside of this jurisdiction, Plaintiff also argues that Defendant
cannot escape liability or circumvent its duty of good faith and fair dealing simply by hiring

counsel to perform the functions of its adjusters and asserting attorney-client privilege or work-product doctrine as a basis for denying access to the evidence of its bad faith.  With respect to attorney-client privilege, Plaintiff explains that "attorney-client 'privilege does not shield [discovery] merely because the[] [information was] transferred to or routed through an attorney.'" *SEPTA v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 257 (E.D. Pa. 2008)(citations omitted).  "[I]n order to successfully assert the attorney-client privilege, the corporation must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." *Id.* (citations omitted). Plaintiff also maintains that counsel must be acting in the role of legal counsel, as opposed to that of an ordinary businessman, for the materials prepared to be protected from discovery.  "To the extent that [attorneys for carrier] acted as claims adjusters . . . , their work-product, communications to a client, and impressions about the facts will be treated herein as the ordinary business of [the carrier], outside the scope of the asserted privileges." *Mission National Ins. Co. v. Lilly*, 112 F.R.D. 160 (D. Minn. 1986).

We agree with Plaintiff that Defendant, as an insurer, is not permitted to shield the discovery of its entire claims handling and investigation under the attorney-client privilege and work-product doctrine by hiring an attorney to perform its services.  As Plaintiff noted in her brief, a bad faith claim may include "evidence of the insurer's bad faith that occurred *after the filing of the complaint*." *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 332 (E.D. Pa. 1999)(citing *O'Donnell v. Allstate Insurance Company*, 734 A.2d 901 (Pa. Super. 1999))(emphasis added). Reviewing Defendant's privilege log, the Court is not able to determine the applicability of either the attorney-client privilege or the work-product doctrine to the documents it has redacted or withheld. For example, redacted documents related to the UIM strategy and evaluation are given the general description of  "work product, attorney-client, confidential, mental impression, not relevant, and post litigation."

As previously discussed, Defendant argued in its letter brief to the Court that information related to the claim evaluation and strategy is protected by the work-product doctrine as it was "prepared in anticipation of litigation, and in fact after litigation was initiated." Under the work-product doctrine a party "[o]rdinarily ... may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). However, materials prepared in the ordinary course of business

10

are not protected. *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993); *see also Mattison v. Imbesi*, 1998 WL 720061, at *2 (E.D. Pa. Oct. 6, 1998)("it is equally clear that Rule 26(b)(3) was not intended to protect all insurance claim files from discovery")(citation and internal quotation marks omitted).

Because insurance companies are required to evaluate claims made by their insureds in the ordinary course of their business, "discovery disputes involving an insurance company's claims file often present problems for the parties." *Borgia v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4375643, at *3 (E.D. Pa. Sept. 3, 2014)(citing *Garvey v. Nat'l Grange Mut. Ins. Co.*, 167 F.R.D. 391, 394 (E.D.Pa.1996)). An insurance company "cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it by its insureds." *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 931101, at *2 (M.D. Pa. Mar.10, 2014) (citation omitted); *Robertson*, 1999 WL 179754, at *3 (same). Nevertheless, a "mere claim of bad faith is not enough to shatter the work-product privilege." *Robertson*, 1999 WL 179574, at *3. "At some point in its investigation… an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation." *Garvey*, 167 F.R.D. at 394.

"The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine." *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). Based on the descriptions provided in the privilege log, Defendant has not yet met this burden. Because the Court cannot make a determination of the applicability of the work-product doctrine, or the other privileges asserted, without further detail from Defendant, **it is ordered that Defendant shall produce all documents on its privilege log for *in camera* review with the following descriptions:**

- State Farm internal file notes regarding communications with legal counsel, Forry Ullman; UIM strategy and evaluation; claim handling
- Amount of reserves and legal expenses on the UIM and Medical Payment claims
- State Farm Evaluation Report for Plaintiff's UIM claim
- State Farm internal emails regarding receipt of this lawsuit, and assignment to legal counsel, Forry Ullman
- ISO Claim Search report
- Asset report regarding Juan Gonzalez Campos, for consent to settle/waiver of UIM subrogation purposes

7.   *Request 7: Any and all claims, notes, correspondence, records, recordings, documents, letters, phone logs, emails, or other communication writings or things pertaining to claim number 38-9H22-508 from October 12, 2016 through present.*

Defendant contends that it does not maintain a physical file folder with respect to most claims. Instead, information regarding this claim is "created, stored, managed and accessed primarily in and through" a proprietary web-based system used by Defendant's associates. Defendant further states that it has previously produced the discoverable portions of its file regarding the claim at issue, and any withheld portions are identified on the privilege log. To the extent the request seeks production of information other than the file kept on the system, Defendant objects to the request as "overly broad, vague, ambiguous, burdensome, seeking information that is not relevant to the subject matter involved in this action, not relevant to the claims and defenses of a party, seeking information that is not reasonably calculated to lead to the discovery of admissible evidence, seeking information that is not proportional to the needs of the case, and to the extent the documents sought violate the attorney-client privilege and/or work product doctrine."

As discussed above, this Court will conduct an *in camera* review to determine if Defendant properly withheld documents related to this request. To the extent that Defendant maintains any of the requested material *outside* of the web-based system, it shall produce such information immediately to Plaintiff unless it is appropriately protected by a privilege.[7] As with the previous requests this Court will limit the time period to March 16, 2017 through 2020.

Therefore, Request 7 shall be limited to the following information: **Any and all claims, notes, correspondence, records, recordings, documents, letters, phone logs, emails, or other communication writings or things pertaining to claim number 38-9H22-508 during the period of March 16, 2017 through 2020.**

---

[7] If Defendant invokes the work-product doctrine, it must provide a sufficient description on its privilege log to demonstrate that the material was prepared because of the prospect of litigation, and not in the ordinary course of business. If Defendant claims the attorney-client privilege, the communication must have been made "for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding." *Rhone–Poulenc Rorer Inc. v. The Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir.1994). The privilege bars discovery of confidential communications made by the client during the course of representation, although it does not apply to the "disclosure of the underlying facts by those who communicated with the attorney." *See Upjohn Co. v. United States*, 449 U.S. 383, 396–396, 101 S. Ct. 677, 66 L.Ed.2d 584 (1981) ("protection of the [attorney-client] privilege extends only to communications and not to facts").

8. *Request 8: Any and all claim files concerning Plaintiff's claim for underinsured motorist benefits, in paper, electronic, and/or other available format.*

Defendant claims that it has already produced reasonably accessible, relevant, non-privileged information in reasonably usable formats responsive to this request. To the extent that the request calls for "the forensic investigation into computing devices or systems to determine or locate information indicating or evidencing documents or electronically stored information ("ESI") that were deleted or that are no longer accessible as active data on that device or system," Defendant objects to the request as unduly burdensome, beyond the scope of permissible discovery, and not proportional to the needs of the case. Finally, Defendant objects to this request to the extent it implies there is an obligation to produce information that is not reasonably available, in more than one form, or in a manner that is different than the reasonably usable forms in which Defendant agreed to produce.

As with the previous two requests, this Court will conduct an *in camera* review to determine if Defendant properly withheld documents related to this request. Defendant is not required to perform forensic investigation into its computing devices or systems to locate information – existing prior to when Defendant's duty to preserve evidence arose – which is no longer accessible. Similarly, Defendant does not need to produce the same ESI in more than one form. Fed. R. Civ. P. 34(b)(2)(E)(iii). **If Defendant maintains any information responsive to the above request in non-electronic forms, it shall produce such information immediately to Plaintiff unless it duplicative of what has already been produced or properly protected by a privilege.**

9. *Request 9: Personnel file, including applications for employment, evaluations, awards, commendations, complaints, reprimands, resumes, attendance records for the period of 2016-2018, tests, performance appraisals, documents reflecting job performance and/or employee conduct, letters of commendation, reprimands, letters of termination, personnel action notices, investigative files and reports concerning or substantially concerning Daniele Smith, Claims Specialist, only.*

13

Defendant objects to this request as vague, ambiguous, unreasonable, seeking information not relevant to the claims or defenses of a party, and not proportional to the needs of the case. Defendant adds that the request seeks confidential information belonging to State Farm and its employees and invades the privacy rights of State Farm employees.  In support of its objections, Defendant contends that an employee's personnel files generally receive a higher degree of protection from discovery. *See Kaufman,* 1997 WL 703175, at *1; *Carlucci v. Maryland Cas. Co.*, 2000 WL 298925, at *1 (E.D. Pa. Mar. 14, 2000). Defendant also cites a string of cases from this district where the courts prohibited discovery of personnel files and internal evaluations of insurance company employees. *See Santer v. Teachers Ins. & Annuity Ass'n*, 2008 WL 755774, at *6 (E.D. Pa. Mar. 18, 2008); *Cantor v. Equitable Life Assur. Soc'y of the United States*, 1998 WL 306208, at *3 (E.D. Pa. June 9, 1998); *Kaufman*, 1997 WL 703175, at *1; *Closterman v. Liberty Mut. Ins. Co*., 1995 WL 472105, at *1 (E.D. Pa. Aug. 9, 1995).

"The request for personnel information implicates the strong public policy against disclosure of such materials."  *Santer*, 2008 WL 755774, at *6 (citing *Adams v. Allstate Ins. Co*., 189 F.R.D. 331, 333 (E.D.Pa.1999) (finding requests for personnel files of employees who worked on plaintiff's claim "overbroad, and seek[ing] information that is unnecessarily invasive")). While information relating to Ms. Smith's employment and job performance may be relevant to Plaintiff's bad faith claim, Plaintiff may learn this information through less invasive means, such as by deposition or interrogatory. *Adams*, 189 F.R.D. at 333. Accordingly, while Plaintiff may obtain the employment information it seeks by deposing Ms. Smith, or through interrogatories, Defendant is not compelled to produce the materials relating to the above request.

### b.  Deposition of Corporate Designee

Plaintiff's notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) describes eight (8) matters for examination and requests the production of three (3) categories of documents.  Defendant objects generally to the deposition of a corporate designee on the basis that it is "unnecessary, harassing, and not proportional to the needs and issues in this matter." Accordingly, Defendant seeks a protective order pursuant to Rule 26(c) to quash the notice of deposition of a corporate designee in its entirety. In its answers and objections to the notice of deposition, Defendant specifically argues that the proposed scope is "overly broad, vague, seeking the disclosure of information shielded from discovery by the attorney-client privilege

and/or work-product doctrine, seeking irrelevant information and documents not proportional to the needs of this case, and seeking confidential and proprietary business information and/or trade secrets." Defendant also objects to the documents and information requested on the same grounds as listed above.

Plaintiff responds that the deposition of a corporate designee is proper as the case involves not only a dispute about the value of Plaintiff's UIM claim, but also claims that defendant mishandled, failed to properly investigate and evaluate the claim and otherwise acted in bad faith. As Plaintiff explains, the purpose of the Rule 30(b)(6) witness is to represent the collective knowledge of the corporation and to present its positions on certain topics. Here, "the manner and method of how Defendant instructs, advises, directs, and incentivizes its employees to handle claims is directly related to what, if anything, the adjuster(s) did in handling this claim and why."

Rule 30(b)(6) permits a party to name a corporation or other organization as a deponent. The party seeking an organization's testimony "must describe with reasonable particularity the matters for examination," and the organization is required to "designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf" who must "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).  As noted by Plaintiff, a designee "is not simply testifying about matters within his or her knowledge, but rather is 'speaking for the corporation' about matters to which the corporation has reasonable access." *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 382 (E.D. Pa. 2006)(citation omitted).

This Court will not quash the notice of deposition of the corporate designee.  Plaintiff is entitled to depose the corporate representative and obtain an official explanation of the claims-handling policies used by State Farm. *See Saldi v. Paul Revere Life Ins. Co*., 224 F.R.D. 169, 193 (E.D. Pa. 2004). Because Plaintiff is permitted to depose a corporate representative, this Court will address Defendant's objections to each matter for examination and document request below.

1. *1st Matter for Examination: The thoughts, analysis, evaluation(s), rationale(s), investigation, actions, research, review, and reasoning of the handling adjuster's supervisor at Defendant insurance company who personally participated in the decision to offer $6,000 on or about October 25, 2019, to resolve Plaintiff's claim. (The term "participated" as used in this paragraph*

> *includes, without limitation, reviewed any documents, analyzed and/or*
> *discussed the matter with anyone, approved the offer of compromise or*
> *provided any information or input whatsoever into the decision).*

Defendant objects to the scope of this line of questioning on the grounds that it seeks information protected from discovery by the work-product doctrine and/or attorney-client privilege.[8]  This Court will reserve its decision on the scope of this matter for examination until after it has conducted an *in camera* review of the documents previously referenced.

> 2. *2nd Matter for Examination: The existence and content of any writings, files,*
> *procedures, claims-handling procedures, guidelines, claims manuals, or*
> *documents of any kind including any material contained in any computer*
> *which existed at any time from 2015 to the present, applicable to the handling*
> *and adjustment of Plaintiff's claim.*

For the reasons already articulated in our analysis regarding the production of documents in connection with the deposition of Daniele Smith, we find that this matter for examination seeks relevant information. Contrary to Defendant's assertion that this line of questioning is overly broad in scope (types of claims and insurance coverage) and geographic area (not limited to Pennsylvania), the description properly limits its examination to those documents "applicable to the handling and adjustment of *Plaintiff's* [UIM] claim." This Court will, however, limit the period of time for this line of questioning.

Thus, this matter for examination shall be limited as follows: **The existence and content of any writings, files, procedures, claims-handling procedures, guidelines, claims manuals, or documents of any kind which existed from March 16, 2017 through 2020, applicable to the handling and adjustment of Plaintiff's claim.**

> 3. *3rd Matter for Examination: Defendant's claims handling manuals, guidelines,*
> *or any other documents used to instruct personnel on the claims handling*

_____

[8] We note that Defendant also objects to this line of questioning for the deposition of its claims adjuster, Daniele Smith. Defendant seeks a protective order limiting the scope of both depositions to prohibit "any inquiry concerning State Farm's internal evaluation regarding the merits of the UIM claim, including the estimated settlement range/authority, valuation, case strategy, strengths and weaknesses of the UIM claim, and "thoughts, analysis, evaluation(s), rationale(s), investigation, actions, research, review, and reasoning" of State Farm's decision to offer $6,000 to resolve Plaintiff's claim."

> *and/or adjustment practice used by State Farm to instruct/train/educate/direct or otherwise teach its claims adjusters to adjust first-party Underinsured Motorists ("UIM") claims as of October 1, 2015.*

For the reasons previously discussed, we find that this matter for examination seeks relevant information. This Court will limit the period of time and geographic scope for this line of questioning.

Accordingly, this matter for examination shall be limited as follows: **Defendant's claims handling manuals, guidelines, or any other documents used to instruct personnel on the claims handling and/or adjustment practice used by State Farm to instruct/train/educate/direct or otherwise teach its claims adjusters to adjust first-party Underinsured Motorists ("UIM") claims in Pennsylvania from March 16, 2017 through 2020.**

4.   *4th Matter for Examination: State Farm's policy, practice and procedure for promotion of claims representatives and/or adjusters within State Farm as of October 1, 2015 through the present.*

Defendant argues that its "policy, practice and procedures for promoting claim specialists is irrelevant to this case, and has nothing to do with the manner in which the plaintiff's claim has been handled." Plaintiff responds that "if Defendant is incentivizing its adjusters to handle, investigate, evaluate, and assess claims in certain ways or by certain means in order to receive monetary or other 'bonuses' or promotions, such information is directly relevant and probative of Plaintiff's claims of bad faith."

We agree with Plaintiff that State Farm's policies, practices, and procedures for promotions of claims representatives and adjusters is relevant to its claim of bad faith. To the extent that there are employee incentives to close out insureds' claims, or handle claims in a particular manner, such information could reveal facts relevant to the motivations of the employees who handled Plaintiff's claim. *See Barnard v. Liberty Mut. Ins. Corp.*, 2019 WL 461510, at *7 (M.D. Pa. Feb. 6, 2019); *see also Saldi*, 224 F.R.D. at 185 (holding that information regarding awards and financial bonus programs for employees were "relevant to show Defendants' state of mind as well as their relationship with the employees who handled

Plaintiff's claims"). As with the previous matters for examination, we will limit the period of time for this line of questioning.

Therefore, this matter for examination shall be limited as follows: **State Farm's policy, practice and procedure for promotion of claims representatives and/or adjusters within State Farm as of March 16, 2017 through 2020.**

> 5. *5th Matter for Examination: Defendant's training materials, practices, and procedures for claims adjusters handling UIM claims as of October 1, 2015 through the present.*

For the reasons already articulated, we find that this matter for examination seeks relevant information. This Court will limit the period of time and geographic scope for this line of questioning.

Accordingly, this matter for examination shall be limited as follows: **Defendant's training materials, practices, and procedures for claims adjusters handling UIM claims in Pennsylvania as of March 16, 2017 through 2020.**

> 6. *6th Matter for Examination: Defendant's methods, policies, procedures, and practices used to calculate the value of damages in a UIM claim as of October 1, 2015 through the present.*

For the reasons previously discussed, we find that this matter for examination seeks relevant information. This Court will limit the period of time and geographic scope for this line of questioning.

Accordingly, this matter for examination shall be limited as follows: **Defendant's methods, policies, procedures, and practices used to calculate the value of damages in a UIM claim in Pennsylvania as of March 16, 2017 through 2020.**

> 7. *7th Matter for Examination: Any and all materials provided to claims adjusters handling UIM claims for the purpose of training claims adjusters and/or representatives as to calculating, evaluation, assessing, and determining value of damages as of October 1, 2015 through the present.*

For the reasons already articulated, we find that this matter for examination seeks relevant information. This Court will limit the period of time and geographic scope for this line of questioning.

Accordingly, this matter for examination shall be limited as follows: **Any and all materials provided to claims adjusters handling UIM claims in Pennsylvania for the purpose of training claims adjusters and/or representatives as to calculating, evaluation, assessing, and determining value of damages as of March 16, 2017 through 2020.**

8. *8th Matter for Examination: The policies and procedures for evaluating, assessing, and investigating personal injuries to an insured in a UIM claim as of October 1, 2015 through the present.*

For the reasons previously discussed, we find that this matter for examination seeks relevant information. This Court will limit the period of time and geographic scope for this line of questioning.

Accordingly, this matter for examination shall be limited as follows: **The policies and procedures for evaluating, assessing, and investigating personal injuries to an insured in a UIM claim in Pennsylvania as of March 16, 2017 through 2020.**

9. *Request 1: Any and all claims manuals, reference materials, training manuals, and/or guidelines for interpretation of the relevant insurance policy.*

Based on our prior analysis of the document requests in connection with the deposition of claims adjuster, Daniele Smith, we find that this request appropriately seeks information relevant to Plaintiff's bad faith claim. To the extent that material responsive to this request is duplicative of material that the Defendant is required to produce for the deposition of Ms. Smith, Defendant need not produce additional copies. Instead, Defendant may identify, by bates number, which materials are responsive to the above request.

As with prior requests, this Court will limit the period of time it covers. Accordingly, Request 1 shall be limited to the following information: **Any and all claims manuals, reference materials, training manuals, and/or guidelines from March 16, 2017 through 2020 for interpretation of the relevant insurance policy.**

19

10. *Request 2: Any and all documents, materials, manuals, guides, claims manuals, handbooks, training materials or other items relating to the topics set forth above.*

Based on our prior analysis of the document requests in connection with the deposition of claims adjuster, Daniele Smith, we find that this request appropriately seeks information relevant to Plaintiff's bad faith claim. To the extent that material responsive to this request is duplicative of material that the Defendant is required to produce for the deposition of Ms. Smith, Defendant need not produce additional copies. Instead, Defendant may identify, by bates number, which materials are responsive to the above request.

As with prior requests, this Court will limit the period of time it covers. Accordingly, Request 1 shall be limited to the following information: **Any and all documents, materials, manuals, guides, claims manuals, handbooks, training materials or other items from March 16, 2017 through 2020 relating to the topics set forth above.**

11. *Request 3: The personnel files of all company employees who worked on Plaintiff's UIM claim.*

Consistent with this Court's earlier finding,  Defendant is not compelled to produce the materials relating to the above request. Plaintiff may obtain the employment information it seeks by through the deposition or interrogatories.

**III.    CONCLUSION**

In accordance with this Court's foregoing analysis, an appropriate order follows.

BY THE COURT:

*/s/ Henry S. Perkin*
HENRY S. PERKIN
United States Magistrate Judge