# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NIDIA SOLANO-SANCHEZ | CIVIL ACTION NO. |
| Plaintiff, | 19-4016 |
| v. | |
| STATE FARM MUTUAL AUTO INSURANCE COMPANY | |
| Defendant. | |

Henry S. Perkin, M.J.                                                May 27, 2021

## MEMORANDUM

Before the Court for resolution are Plaintiff's informal motions to compel wherein Plaintiff seeks assistance with discovery issues related to the depositions of Defendant's claims adjuster, Daniele Smith, and corporate designee. On January 22, 2021, this Court ruled on the majority of the discovery disputes, but deferred its ruling on several categories of documents pending Defendant's submission of unredacted versions of these documents for in *camera review*. Upon consideration of the parties' letter briefs and the relevant case law, and after reviewing the remaining documents *in camera*, the Court will grant in part and deny in part Plaintiff's requests as set forth below.

### I. BACKGROUND

This Court previously set out a detailed account of the factual and procedural history of this case in its first memorandum on Plaintiff's motions to compel, filed January 22, 2021. (ECF No. 45.) Therefore, we only address those facts relevant to the resolve the outstanding issues before this Court.

On September 3, 2019, Plaintiff filed the instant lawsuit, asserting claims for declaratory judgment, breach of contract, and bad faith against Defendant State Farm arising from her claim for underinsured motorist ("UIM") benefits. Plaintiff issued notices of deposition to Defendant's claims adjuster, Daniele Smith, and to Defendant's corporate designee. Along with the notices of

deposition, pursuant to Federal Rules of Civil Procedure 30(b)(2) and 34(a)(1), Plaintiff requested that Defendant produce a number of documents at the depositions.

In response, Defendant sent Plaintiff its answers and objections to the requests for production of documents. Defendant objected entirely to the deposition of a corporate designee on the grounds that it is "unnecessary, harassing, and not proportional to the needs and issues in this matter." Defendant also objected specifically to the scope of certain matters for examination on the basis that they sought information protected from discovery. The parties agreed to seek the Court's assistance in resolving the disputed issues and the Court held two telephone conferences on October 6, 2020 and October 8, 2020. Both parties submitted letter briefs, as requested by the Court, supplementing their oral arguments.

On January 22, 2021, this Court filed an order and memorandum ruling on most of the discovery disputes, but, as previously noted, deferred its ruling on several categories of documents. (ECF Nos. 44, 45.) This Court ordered Defendant to submit all documents on its privilege log for *in camera* review with the following descriptions:

- State Farm internal file notes regarding communications with legal counsel, Forry Ullman; UIM strategy and evaluation; claim handling
- Amount of reserves and legal expenses on the UIM and Medical Payment claims
- State Farm Evaluation Report for Plaintiff's UIM claim
- State Farm internal emails regarding receipt of this lawsuit, and assignment to legal counsel, Forry Ullman
- ISO Claim Search report
- Asset report regarding Juan Gonzalez Campos, for consent to settle/waiver of UIM subrogation purposes

This Court also reserved its decision on the first matter for examination described in the notice of deposition of the corporate designee – relating to the analysis and handling of the claim – pending review of the documents listed above.

Defendant provided unredacted versions of the documents ordered for inspection to the Court on February 5, 2021. Having reviewed these documents, this Court is prepared to rule on the remaining objections to the requests for production and scope of the first matter for examination designated in the notice of deposition to the corporate designee.

## II. DISCUSSION

In Plaintiff's sixth, seventh, and eighth requests for documents in connection with the with the deposition of Defendant's claims adjuster, she seeks information related to the review,

evaluation, and assessment of her claim for UIM benefits. Defendant objected to these requests on the grounds that, among other things, they seek information protected by the attorney-client privilege and/or work-product doctrine. After reviewing Defendant's privilege log, it appeared to this Court that many of the withheld documents relate to these requests. However, based on the descriptions of the documents in the privilege log, this Court could not determine the applicability of the work-product doctrine, or the other privileges asserted, without further detail from Defendant. Thus, we ordered Defendant to produce those documents to the Court for examination.

The Court has reviewed unredacted versions of the documents it requested from the privilege log, and will address each category of material related to the Plaintiff's requests for production below.

### a. Reserve Information

"An insurance reserve is a pool of funds allocated to satisfy obligations that may arise under a claim." *Peco Energy Co. v. Insurance Co. of N. Am.*, 852 A.2d 1230, 1232 n. 3 (Pa.Super.Ct.2004). Pennsylvania law "requires insurance companies to set aside reserves upon notice of potential losses under their policies." *Fidelity & Deposit Co. of Md. v. McColloch*, 168 F.R.D. 516, 525 (E.D.Pa.1996) (citing 40 P.S. § 71). Defendant has redacted all of the information in the claims file related to reserves, maintaining that such information is "confidential, mental impression, and not relevant."

District Courts within the Third Circuit are split on the question of whether reserves are discoverable in bad faith cases. *Consugar v. Nationwide Ins. Co.*, 2011 WL 2360208, at *5 (M.D. Pa. June 9, 2011) (Munley, J.) (collecting cases and discussing the split in authority). In a recent case, *Barnard v. Liberty Mutual Insurance Corp.*, the Middle District of Pennsylvania articulated the prevailing view, as follows:

> [R]eserves may be discoverable in a bad faith action when the claim relates to the insurer's failure to settle or where there is a discrepancy regarding the value of the claim. *See e.g., Borgia v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4375643, at *4 n.5 (E.D. Pa. Sept. 3, 2014) (finding the reserves were relevant to the plaintiff's [underinsured motorist] claim because "the establishment of reserves would serve little, if any, purpose unless the reserves 'have some relationship to the insurer's estimation of the insured's potential liability'") (citations omitted); *Consugar*, 2011 WL 2360208, at *5 ("the amount set aside for reserves 'is certainly germane to any analysis [defendant] made of' the claim's value,

3

and of whether defendant acted in bad faith in processing the claim") (citations omitted); *Oak Lane Printing & Letter Serv., Inc. v. Atlantic Mut. Ins. Co., No*. 04-3301, 2007 WL 1725201, at *4 (E.D. Pa. June 13, 2007) (stating that reserves "must be relevant to a specific issue presented in a bad faith action," such as when "the insurer fails to settle or where there is a disputed issue regarding the value of the claim").

*Barnard v. Liberty Mutual Insurance Corp*., No. 18-1218, 2019 WL 461510 at *5 (M.D. Pa. Feb. 6, 2019). In contrast, "when the bad faith claim is based on a denial of coverage and does not involve the value of the claim or [the plaintiff's] estimation of liability ... the reserve information requested is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Id.* at *6 (internal quotation marks omitted).

Here, Plaintiff's claim for bad faith involves Defendant's failure to settle the claim because of a discrepancy regarding the value of the claim rather than an outright denial of coverage. Thus, the reserve information is relevant and should be produced. To the extent that Defendant's reserve for Plaintiff's claim is much larger than the amount it has offered Plaintiff in settlement, "a jury might reasonably infer, in the absence of some plausible explanation by the [Defendant], that [Defendant] was disregarding its obligation to deal reasonably with its insured." *Cicon v. State Farm Mut. Auto. Ins. Co.*, No. 3:L4-CV-2187, 2015 WL 5021736, at *4 (M.D. Pa. Aug. 21, 2015).

Defendant also argues that the reserve information is protected by the work-product doctrine as it falls under "mental impressions." The Honorable Judge Harvey Bartle III rejected this argument in a case involving a claim for bad faith against an insurer. *See Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co.*, No. CIV.A.03-4145, 2004 WL 3037947, at *2 (E.D. Pa. Dec. 30, 2004). Judge Bartle explained that "[m]ental impressions and opinions of the party and its agents, however, are not protected by the work product doctrine, unless they are prepared for an attorney in preparation for possible litigation." *Id.* Additionally, "[w]ork product prepared in the ordinary course of business is not immune from discovery." *Id.* Defendant does not argue that its reserves were prepared in anticipation of litigation or other than in the normal course of business. Accordingly, Defendant is directed to produce unredacted versions of its documents discussing reserve information regarding Plaintiff's claim (Bates 42, 187-88).

### b. State Farm Internal Emails Regarding Receipt of this Lawsuit and Assignment to Legal Counsel

Defendant withheld internal emails regarding receipt of the lawsuit and assignment to its legal counsel. Defendant's privilege log indicates that these documents were withheld on the grounds that the information is "work product, mental impression, confidential, and post litigation." After *in camera* review, this Court finds that the documents have been appropriately withheld. These documents, dated after the lawsuit was filed, are protected by both attorney-client privilege and the work-product doctrine as the communications were made with the purpose of seeking legal advice and discuss litigation strategy. Thus, Defendant will not be required to produce these documents (Bates 1650-1652, 1691-1693).

### c. ISO Claim Search Report[1]

As explained in the footnote below, the ISO Claims Search Database is a nationwide database utilized by insurance companies to track claims history and detect fraud. Defendant withheld the report on Plaintiff's claims history on the basis that it is not relevant. For discovery purposes, relevance is broadly and liberally construed. *Hickman v. Taylor*, 329 U.S. 495 (1947). Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). This Court finds that this information is relevant to Plaintiff's bad faith claim to the extent that it is a factor Defendant considered in evaluating Plaintiff's Underinsured Motorist Claim. Therefore, Defendant shall produce an unredacted version of its ISO Claim Search Report (Bates 1786-1790).

### d. Asset Report Regarding Juan Gonzalez Campos, for Consent to Settle/Waiver of UIM Subrogation Purposes

Defendant withheld the asset report of Juan Gonzalez Campos, the tortfeasor in the motor vehicle accident underlying this lawsuit. This report was withheld on the grounds that it is not relevant and confidential. Considering the allegations in Counts I through III of the Complaint -

---

[1] The ISO ClaimSearch database is an insurance fraud detection system owned by the Insurance Services Office. It contains detailed records of losses paid from participating insurers. Insurance companies can become a member of ISO and send claims information to ISO to check whether similar claims have been filed with other insurance companies. *See generally*, Ins. Serv. Office, ISO ClaimSearch, VERISK, https://www.verisk.com/insurance/products/claimsearch/ (last visited May 25, 2021).

declaratory judgment, breach of contract, and bad faith - this Court agrees that the asset report is not relevant and need not be produced.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. This asset report was generated on January 16, 2018 and Plaintiff received consent to settle with Mr. Campos' insurer that dame day.  This Court finds that the asset report has no relevancy to the claims Plaintiff asserts arising from Defendant's failure to settle her claim for UIM benefits. For these reasons, Defendant will not be required to produce the asset report (Bates 1791-1795).

### e. State Farm Evaluation Report for Plaintiff's UIM claim

As indicated in its privilege log, Defendant withheld its evaluation report for Plaintiff's UIM claim on the following bases, "work product, mental impression, attorney-client, confidential, and post litigation." Upon review, these documents consist of not only the final evaluation of Plaintiff's claim prepared by claims personnel, dated October 17, 2019, but also a detailed history of all updates made by claims adjusters to the report beginning on January 16, 2018, the date Plaintiff settled with the tortfeasor.

### i. Attorney-Client Privilege

Turning first to Defendant's claim that these documents are protected by the attorney-client privilege, this Court notes that the privilege bars discovery of confidential *communications* made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client. *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) (citation omitted).  The privilege does not apply to the "disclosure of the underlying facts by those who communicated with the attorney." *See Upjohn Co. v. United States,* 449 U.S. 383, 395–396 (1981) ("protection of the [attorney-client] privilege extends only to communications and not to facts"). The evaluation report contains no communications between Defendant and its counsel. Rather, the report contains a series of notations regarding the claim by the claims adjuster, Daniele Smith. Thus, the attorney-client privilege is inapplicable to this document.

### ii. Work-Product Doctrine

Regarding the work-product doctrine, Federal Rule of Civil Procedure 26(b)(3) protects "documents and tangible things" from discovery that are prepared in anticipation of litigation or for trial by or for another party or its representative. A document is prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d at 803 (quoting 8 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2024 (1970)). In contrast, materials prepared in the ordinary course of business are not protected. *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993); Fed. R. Civ. P. 26(b)(3), advisory committee's note, 1970 Amendment ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."). "The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine." *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

As this Court previously noted in its January 22, 2021 memorandum, because insurance companies are required to evaluate claims made by their insureds in the ordinary course of their business, "discovery disputes involving an insurance company's claims file often present problems for the parties." *Borgia*, 2014 WL 4375643, at *3 (citing *Garvey v. Nat'l Grange Mut. Ins. Co.*, 167 F.R.D. 391, 394 (E.D.Pa.1996)). An insurance company "cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it by its insureds." *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 931101, at *2 (M.D. Pa. Mar.10, 2014) (citation omitted); *Robertson v. Allstate Ins. Co.*, 1999 WL 179754, at *3 (E.D. Pa. Mar. 10, 1999) (same). Nevertheless, a "mere claim of bad faith is not enough to shatter the work-product privilege." *Robertson*, 1999 WL 179574, at *3. "At some point in its investigation… an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation." *Garvey*, 167 F.R.D. at 394.

Thus, to determine whether Defendant properly invoked the work-product doctrine, this Court must first establish when Defendant reasonably anticipated litigation. The party asserting

work product protection must demonstrate that it subjectively anticipated litigation, and that the anticipation was objectively reasonable. *See Borgia* v, 2014 WL 4375643, at *3. "While the court must initially focus on the state of mind of the party preparing, or ordering preparation, of the document, that person's anticipation of litigation must be objectively reasonable for the work product protection to apply." *Id.* (citing *Martin*, 983 F.2d at 1260.) A party's anticipation of litigation is objectively reasonable if "there existed an identifiable specific claim or impending litigation when the materials were prepared." *Id.* (citing *Montgomery Cnty. v. Microvote Corp.*, 175 F.3d 296, 305 (3d Cir.1999) (Greenberg, J., concurring); *Martin*, 983 F.2d at 1260).

Defendant contends in its letter brief before this Court that "it was apparent early on in the UIM claim that this matter would be in litigation if State Farm did not pay the $45,000 UIM policy limits." (Def. Nov. 9, 2020 Ltr. Br. at 3.) Specifically, Defendant notes that Plaintiff's counsel demanded the policy limits in Plaintiff's initial UIM notice letter on January 12, 2018. Further, three months later, on April 19, 2018, Defendant retained legal counsel to assist in the claim investigation and evaluation.

This Court is guided in its analysis of when Defendant reasonably anticipated litigation by two cases from this District involving claims for breach of contract and bad faith in the context of UIM claims. Beginning with *Borgia*, the Honorable Chief Judge Juan R. Sánchez ruled that the defendant insurer reasonably anticipated litigation when it was apparent that "[the plaintiffs'] demand far exceeded [the insurer's] valuation of the claim." 2014 WL 4375643, at *3. This occurred no later than November 21, 2013, when the defendant insurer retained outside counsel to assist in in handling the claim. *Id.* Two months prior to retaining counsel, in September, the defendant insurer received a letter from the plaintiffs' counsel threatening to proceed with litigation if the claim was "not resolved shortly." *Id.* This threat of litigation was made in the context of a second demand for payment of full policy limits. *Id.* Judge Sánchez explained that "[b]y the time [the defendant] hired counsel, two months had passed since [the plaintiffs] threatened litigation and [the defendant] had not yet made a settlement offer, it is apparent [the plaintiffs'] demand far exceeded [the defendant's] valuation of the claim." *Id.*

Second, this Court looks to the Honorable Judge Joseph F. Leeson, Jr.'s decision in *Wagner v. Allstate Ins. Co.*, 2016 WL 233790 (E.D. Pa. Jan. 19, 2016). In this case, the defendant insurer argued that it anticipated litigation on November 12, 2012 when it received a

8

demand letter from the plaintiff's counsel for policy limits. Id. , at *6. The letter indicated that if the plaintiff did not receive the policy limits, the claim for benefits would be withdrawn and the controversy would be litigated. *Id.* The claims adjuster subsequently sent a letter to the plaintiff's counsel stating that he needed additional information about medical treatment records to "continue [the defendant's] review of the claim." *Id.* The plaintiff provided these records and, on November 15, 2012, the defendant extended a settlement offer. *Id.* The plaintiff contended that during those intervening days, the defendant was still in the process of assessing the value of their claim through its review of the pertinent medical records and had not yet anticipated that litigation would follow. *Id.*

Judge Leeson agreed with the plaintiff, finding that the defendant could not have reasonably anticipated litigation because it was still collecting information from the plaintiff to "continue [its] review of the claim." Judge Leeson further explained that, "while [the claim's adjuster maintains] that he reasonably anticipated litigation from the moment he received [the plaintiff's] November 12 ultimatum, he does not explain how he knew, prior to reviewing the full medical treatment records that he requested, that their demand for payment in the amount of the policy limit was not warranted." *Id.* Thus, Allstate had not shown that it reasonably anticipated litigation before November 15, 2012 when it extended a settlement offer. *Id.*

With these two cases in mind, we turn to the facts in the case before this Court. In Plaintiff's initial UIM notice letter dated January 12, 2018, her counsel demanded the policy limits. Defendant retained legal counsel on April 19, 2018 to assist with conducting the Statement Under of Oath of Plaintiff, subpoenaing the medical records from Plaintiff's numerous medical providers, and obtaining an independent medical examination of Plaintiff. On July 20, 2018, after the Statement Under Oath was completed, Plaintiff's counsel again made a demand for policy limits, though she made no threat or mention of litigation. Reviewing the e-mails between counsel, it appears that, from July 20, 2018 through February 27, 2019, the communications involved only requests for authorization of medical records and scheduling of the independent medical examination. On August 26, 2019, the independent medical examination occurred. Shortly after, on September 3, 2019, Plaintiff filed this lawsuit.

Unlike *Borgia*, Plaintiff's counsel never threatened or mentioned litigation in her demands for the policy limit on January 12, 2018 and July 20, 2018. In fact, in her second

9

demand following the Statement Under Oath, Plaintiff's counsel wrote to "confirm that [Plaintiff] will accept tender of her UIM policy limits" and asked that Defendant's counsel "advise to what, if anything, [Defendant] requires in order to tender [Plaintiff's] available underinsured motorist benefits." (ECF No. 1, Ex. I.) Similar to *Wagner*, the communications between counsel from July 20, 2018 through February 7, 2019 concerned continued requests for medical records and authorizations to fully assess Plaintiff's claim. (ECF No. 1, Exs. J-N.)

From our review of the documents Defendant provided to this Court, it is not apparent that Defendant valued Plaintiff's claim far below the demand for policy limits prior to its completion of the independent medical exam on August 26, 2019. However, we do find that, by the time this examination concluded, it is likely that Defendant had determined Plaintiff's demand for payment in the amount of the policy limit exceeded its expected offer for settlement. Accordingly, the Court concludes that Defendant reasonably anticipated litigation with Plaintiff regarding her underinsured motorist claim no later than August 26, 2019. Defendant shall thus produce an unredacted version any entries on the evaluation report for Plaintiff's claim prior to August 26, 2019 (Bates 204-211, 214-253).

### f. State Farm Internal File Notes Regarding Communications with Legal Counsel, Forry Ullman; UIM Strategy and Evaluation; Claim Handling

Defendant has redacted all of the information in its internal file notes related to communications with legal counsel, UIM strategy and evaluation, and claim handling on the grounds that such information is "work product, attorney-client, confidential, mental impression, not relevant, and post litigation." Having reviewed these documents, they appear to be an account of all updates made on the handling of Plaintiff's claim by the claims adjuster, Daniele Smith. In accordance with our analysis above, any entries made prior to August 26, 2019 redacted on the basis of the work-product doctrine are discoverable and must be produced. Notably, the information contained at Bates Number 74, containing the claims adjuster's summary of the Statement Under Oath, must be produced. Any redactions made due to the attorney-client privilege are appropriately redacted, and need not be produced, as they are summaries of communications between the claims adjuster, in-house counsel, and outside counsel.

**g. 1st Matter for Examination: The thoughts, analysis, evaluation(s), rationale(s), investigation, actions, research, review, and reasoning of the handling adjuster's supervisor at Defendant insurance company who personally participated in the decision to offer $6,000 on or about October 25, 2019, to resolve Plaintiff's claim**

Finally, as previously noted, this Court reserved its decision on the permissible scope of the first matter for examination listed in Plaintiff's notice of deposition of the corporate designee. This matter for examination is described in full as:

> "The thoughts, analysis, evaluation(s), rationale(s), investigation, actions, research, review, and reasoning of the handling adjuster's supervisor at Defendant insurance company who personally participated in the decision to offer $6,000 on or about October 25, 2019, to resolve Plaintiff's claim. (The term "participated" as used in this paragraph includes, without limitation, reviewed any documents, analyzed and/or discussed the matter with anyone, approved the offer of compromise or provided any information or input whatsoever into the decision).

(Pl. Notice of Dep. July 10, 2020.) Defendant objects to this line of questioning both for the deposition of the corporate representative as well as for the claims adjuster, Daniele Smith.

Defendant contends that this information is protected by the work-product doctrine and/or attorney-client privilege. With respect to the work-product doctrine, Defendant argues that information regarding its claim evaluation and strategy is protected from discovery as it was prepared "in anticipation of litigation/after litigation was filed." Regarding attorney-client privilege, Defendant maintains its communications with its legal counsel since April 2018 are clearly and unequivocally protected by the attorney-client privilege.

As already discussed, the attorney-client privilege bars discovery of confidential *communications* made by the client during the course of representation, although it does not apply to the "disclosure of the underlying facts by those who communicated with the attorney." See *Upjohn* Co., 449 U.S. at 395–396 ("protection of the [attorney-client] privilege extends only to communications and not to facts"); *United States Fidelity & Guaranty Co. v. Barron Industries, Inc.*, 809 F. Supp. 355, 364 (M.D.Pa.1992) ("The [attorney-client] privilege simply does not attach to a discussion of the facts, no matter how extensive or involved the discussion may become). Therefore, Plaintiff may not ask the deponent about specific communications he

or she had with counsel related to this matter for examination, but may inquire as to the factual basis for the decision not to offer Plaintiff her policy limits.

In regard to the work-product doctrine, this Court has already observed that Federal Rule of Civil Procedure 26(b)(3) protects "documents and tangible things" from discovery that are prepared in anticipation of litigation or for trial by or for another party or its representative. As discussed in the seminal case *of Hickman v. Taylor*, 329 U.S. 495 (1947) the work-product protection also extends to intangible work product. *See In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003)("it is clear from *Hickman* that work-product protection extends to both tangible and intangible work product.")  "The principles announced in *Hickman* protect the intangible work product which may be sought through deposition questions" *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 691 (E.D. Pa. 1986). Thus, in line with our foregoing analysis regarding the work-product doctrine,  Plaintiff's counsel must limit any questions under this matter for examination to the time period before August 26, 2019.

### III. CONCLUSION

In accordance with this Court's foregoing analysis, an appropriate order follows.

BY THE COURT:

*/s/ Henry S. Perkin*_____
HENRY S. PERKIN
United States Magistrate Judge